You can stand back there, if you can stand back there. Good morning. Andrew Mazzucca from Markel Karno. I'm sorry. Andrew Mazzucca from Markel Karno and Associates on behalf of the opponent. What is your name? Andrew Mazzucca. M-A-Z-Z-U-C-A. Thank you and may it please the court. With this appeal, we are asking this court to find that the circuit court of Cook County's local rule 6.5 paragraph 1D is an invalid exercise of the circuit court's rulemaking authority. In this case, while the law division judge that oversaw the survival action brought by the decedent's estate awarded contractual contingent attorney's fees of 40% of the settlement, the pro-rate division judge overseeing the estate administration denied distribution of any attorney's fees in excess of one-third of the settlement, pursuant to the limits set by local rule 6.5 paragraph 1D. The pro-rate judge denied fees in excess of one-third, despite stating that if he had the discretion to award the full 40% fees, as the law division judge did, he would do so, but he could not due to the constraints of the local rule. The supposition that the absolute bar on attorney's fees exceeding one-third of recovery contained in rule 6.5 paragraph 1D is an invalid exercise of the court's rulemaking authority because it's not a procedural rule, but rather reflects a substantive change in the established law regarding the enforceability of reasonable contingent fee contracts. Can I stop you for a moment, counsel? Sure. Your argument as to the invalidity of the rule goes to the fact that it infringes on contractual rights. That is one aspect of it, correct. But the contingency fee agreement that it appears that you're seeking to enforce was with Mr. Nash, who died after the formation of the contract, correct? Correct. It was initiated by Mr. Nash himself and then ratified. How was it ratified? The representative agreed to the same terms and agreed. Is that in writing? That she ratified these terms? There was no separate attorney fee agreement that was signed by the representative. So the contract really ceased to be effective once Mr. Nash died. As to Mr. Nash, correct, but it was the same terms that the client agreed to and those terms have not been challenged as being what she agreed to. But to enforce a contingency fee agreement has to be in writing, does it not? Under the professional rules of conduct, correct. And there would be a challenge to it if a contingency fee agreement had something improper on it if it wasn't fully put in writing and you sought to enforce it if it was against the rules of professional responsibility, it would be against public policy to enforce it, would it not? If there were absolutely no writing and it was purely an oral agreement, that may be correct. In this case, those aren't the facts that are present and while there may be no signed agreement with the representative, there's been no challenge by the court, by either court that was involved in the settlement of this case or by the representative or by any of the heirs as to what the attorney's fees that would be earned were and those were the fees that were approved by the law division judge. Frankly, the record wasn't developed as to what writings exist to evidence the agreement because it wasn't challenged. And to that, I can't speak to the things that aren't in the record, but given the back and forth necessary in order to effectuate a settlement and secure distribution and comply with just the procedural requirements of the Pro-Right Act in distributing to the heirs and everything, there is a paper trail that exists. It hasn't been included in the record because it hasn't been part of any challenge. What paper trail? Correspondence, e-mails, et cetera. That do what? Show what you say is a ratification? That reflects our agreement as to the terms of the contingent fees. Changing the subject just a little bit. Sure. In the court below, you did argue that the rule did not apply. Correct. But you've chosen not to raise that argument here. Yes. I do not believe it was one of the stronger arguments. My reading of the Act, also my reading of the local rule, applies to actions brought on behalf of decedents of states. While the case was initiated by Mr. Nash himself and litigated for, I think, over a year or two years on his behalf, once he died, I don't know that it stopped being a case. I'm sorry, let me rephrase that. Once he died and the administrator took over, I don't know that it is. Well, that's why you were in probate, right? Correct. Because now it was the representative bringing it. Correct. Mr. Nash's suit could not have continued if there hadn't been a representative. Right. If the representative of the estate hadn't carried forward with it, there would have been no other action. But wasn't the representative appointed to stand in the place of Mr. Nash? Correct. Wasn't that an ongoing action? It is the same action that was initiated by Mr. Nash and then that the representative substituted into. Then we're back to the issue of how does 6.5 apply. If Mr. Nash brought the suit, when you read the rule, it says the procedure to be filed in cases involving actions for wrongful death or for personal injury brought by a representative, et cetera. Did a representative bring this case or did Mr. Nash bring this case and the representative continue the same case? That was our argument, that Mr. Nash brought the case and that the representative continued on with the case. Well, Mr. Nash initiated the suit, but once he died, the suit could not continue without the representative. Is that correct? That is correct. But the suit continued. It is the same action. That's correct. It's the same action for purposes of statute of limitations and whatever may have taken place before him, but the suit is now one brought by a representative. That is who the party plaintiff became, correct. So getting back to the validity of the rule, our argument is that the rule is not procedural. It represents a substantive change in the established law regarding the enforcement of reasonable contingent fee contracts and contains no mechanism, no procedural mechanism by which the plaintiff's attorneys may seek or the court can assess and award reasonable contingent fees in excess of one-third. Now, when it comes to exercising authority under local court rule and decisions on the reasonableness of attorney's fees, those are reviewed by this court on an abusive discretion standard. However, the validity of the rule itself is a question of law that's reviewed de novo. When it comes to local court rules, the circuit courts of this stage are permitted to promulgate rules that facilitate practice and procedure and the orderly disposition of business, but the requirement is that the rules must be procedural in nature and cannot change the substantive law. We've already stated what Rule 645 does in that it creates an absolute limit on contingent fees in excess of one-third, except in the case of an appeal, in which case fees of 50 percent would be permitted. Now, this is a change. This is in contradiction to the substantive law of contingent fee contracts, which is that they are generally enforced unless unreasonable. In assessing the reasonableness, the court looks to the factors enumerated in Rule of Professional Conduct 1.5 and the related established case law that have addressed those issues. But there is no substantive limit to what the reasonableness of fees are. There's no cap written into law or established in the common law that says fees in excess of one-third are categorically unreasonable. Can I go back to whether the rule applies? The settlement proceeds were an asset of the estate, right? That's correct. So the rule says it applies to actions for personal injury brought by a representative on behalf of a decedent's estate. So that's what we have here. Is that correct? We have a decedent's estate. The person represented was the party plaintiff and was the party plaintiff at the time that the proceeds were obtained. When Ms. Nash was appointed a representative, she was appointed to be a special representative. That's correct. And the order said that it was so she could bring a wrongful death and a survival action. Did she ever bring a wrongful death? My understanding is that it was only brought as a survival action. And that's how the settlement was distributed. So there's no substantive cap on the reasonableness of attorneys' fees. And there's a case law that I've cited that says in some cases fees of even 25 percent are unreasonable, or fees above 40 percent are reasonable, and it all depends on the circumstances. In this case, there's been no challenge to whether 40 percent is reasonable or not. In fact, both the law division judge that initially approved 40 percent, as well as the probate judge who stated on the record that if it had discretion, it would award 40 percent, shows that there's no question as to whether, in this case at least, fees in excess of one-third, 40 percent, are reasonable. Now, it's instructive, I believe, to compare this case with the Illinois Supreme Court case of Leonard C. Arnold, Leonard versus Northern Trust, to demonstrate the difference between what that court held to be a proper exercise of local rulemaking authority and what's been done in this case. In Leonard C. Arnold, the Lake County Circuit Court had local rule 9.20E, which established a benchmark of 25 percent attorney's fees for cases involving claims of minors. If fees were sought in excess of 25 percent, the attorneys had to file a sworn statement and justify those additional fees. In that case, the trial court limited the attorneys' fees to 25 percent because no sworn statement was provided to justify fees exceeding 25 percent. And the attorneys appealed, arguing that the rule was an invalid change to the established substantive law. The Illinois Supreme Court rejected that argument, finding that there was no change to substantive law that contingent fees are enforceable unless unreasonable. The rule provided merely a procedural mechanism for the evaluation of reasonable fees above the 25 percent benchmark. The rule did not contradict the principle that reasonable contingent fees would be enforceable. The Lake County rule was okay because, at its heart, it was procedural. It did not set an absolute bar to fees above 25 percent. And that's specifically stated in the opinion where the court stated, moreover, the circuit rule does not erect an absolute barrier to an attorney fee in excess of 25 percent but only establishes a benchmark for the reason of this determination. In this case, there is an absolute limit of one-third. It's not a benchmark. It's not a procedural mechanism by which the attorney can justify fees in excess or the court can consider and award fees in excess. It's the cap, and that's contradictory to the established law, and that's what makes it an invalid exercise of the court's authority. Further, that absolute cap, irrespective of what the agreements of the parties are or what may be reasonable, we argue is a violation of the due process rights of the attorneys, the procedural due process. There is a freedom to contract in Illinois, and, you know, it's a qualified right. It's subject to the reasonable and legitimate exercise of the police power of the state. But that requires at least some process. There is no process that was provided for in this case. The, you know, despite the judges involved agreeing that 40 percent was justified, was reasonable, the courts felt that their hands were tied, that they lacked any discretion to consider those reasonable fees. Would you have the same argument about subsection D if the fees were being requested under quantum merit? If the fees were, well, if the percentage limitation were applied to prohibit quantum merit fees, that would be in excess of one-third of the recovery, then yes, I would. Further, you know, in comparing the Leonard C. Arnott case where the court was, you know, the state's interest in protecting minors, which is significant. It also is significant in the protections for the disabled or other special classes where the court's scrutiny of contingent fees is more appropriate and more justified than it would be in this case, where the beneficiaries and the, well, first off, where Mr. Nash himself prior to his death approved of the fees, where the action only remained pending, was able for the state to step into because of Mr. Nash's initiating of the case and the attorneys initiating the case in court pursuant to that fee agreement, and for the state to then step into the existing case and recover the proceeds. All of the beneficiaries, sorry, none of the beneficiaries are minors, none of the beneficiaries are disabled persons, and that interest that the Leonard C. Arnott court spoke to of protecting the disabled or minors is significantly less strong in this case. I mean, the court has the ability to supervise the reasonableness of contingent fees, but that need is less necessary and less compelling when there are neither minors nor disabled persons involved. Finally, by applying a strict cap on contingent fees, particularly in this case, which was a survival action premised on the Nursing Home Care Act, serves to, can serve and would serve as a chilling effect and would run contrary to the intended purposes of the act, where the provision providing for an award of attorney's fees against a responsible defendant is significant not just in the dollar amount that can be involved, where in an aside to a case where attorney's fees, that was 750% of the treble actual damages that were awarded to the plaintiff. Attorney's fees were 750% and those were upheld as being justified and reasonable, and that's because the provision providing for attorney's fees is intended to promote the private enforcement of the act and to incent attorneys to take these cases where the actual damages may be small or may be limited. And if this cap of one third is permitted to be placed on any case that originates with a live plaintiff suffering from nursing home abuse, who then subsequently dies, the purposes of the act would not be filled. And given the population of nursing homes, the prospect of that plaintiff dying prior to the resolution of the case would weigh on anyone considering whether or not this is a case where the attorneys are going to take. And if that the prospect of those fees being limited to one third. I don't know that attorneys would still want to pursue, wouldn't want to think that coldly of attorneys. Well, your Honor, but given that the legislative intent of the law provided that carrot to encourage attorneys to take cases that may be marginal, that may have little natural damages, in order to promote the enforcement of the act and the protection of residents and nursing homes, it's not something where you want to just hope on the goodwill of the attorneys. The law provides that incentive and application of this local rule on top of that would. So then you are agreeing with, is that Leonard Arnold, that poor man's contingency fee is a poor man's key to the courthouse door? Absolutely. So are you saying that this rule is inapplicable in this case, 6.5? How can we completely ignore it? The court can, I can't say that the court can ignore it, the court can recognize it and declare it to be invalid. And declare it to be invalid, is that what you're asking the court to do? Yes, I am. I'm asking the court to find that this is an invalid exercise of the court's rulemaking authority. It exceeds the limits on the court establishing procedural rules, but rather creates a substantive change in the law. The substantive change is capping reasonable fees at one-third. And our guidance is found in Leonard's case, is that what you're saying? That's correct, that's correct. Anything else? No, I just would ask that those arguments that were voiced in the briefs that may not have been raised here stand. And ask that the court reverse the lower court's decision and approve distribution of attorney's fees for the full 40 percent pursuant to the approval order of the law division. Or for any further relief as the court deems just and proper. Thank you. Thank you, counsel. Thank you, counsel. This matter will be taken under advisement.